UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| LAURIE MACHUT, | ) No. CV 12-05220-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge's ("ALJ") finding on

          Plaintiff's residual functional capacity is not supported by substantial evidence and whether the relied-upon hypothetical question to the vocational expert was incomplete and inaccurate;

2. Whether the ALJ improperly rejected the opinions of Plaintiff's treating sources; and

3. Whether the ALJ improperly discredited the testimony of Plaintiff and her mother.

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THIS MATTER WILL BE REMANDED FOR A NEW HEARING**
**TO FULLY CONSIDER MENTAL HEALTH EVIDENCE**

From a mental health standpoint, this is a complex case. The ALJ determined that Plaintiff has severe impairments of bipolar disorder and attention deficit hyperactivity disorder, with alternative diagnoses of major depressive disorder and a learning disorder. (AR 18.) Largely based upon her reliance on the evaluations of two State Agency physicians, Drs. Lee and Leaf (respectively, AR 500-513, 550-563), the ALJ determined that Plaintiff's Residual Functional Capacity ("RFC") would allow her to perform simple repetitive tasks not requiring a rapid pace or high production quota; and limitation to occasional interaction with the general public. (AR 20.)

Plaintiff raises a number of issues with the ALJ's mental RFC determination. First, Plaintiff makes an unchallenged assertion that the State Agency physicians prepared their reports and rendered their opinions before the administrative file contained records from Plaintiff's treating psychologist, Dr. Gantt, covering the period 2006-2010; her former psychiatrist, Dr. El-Asyouty (AR 714-718); and her current psychiatrist, Dr. De Guzman. (AR 634-636, 728-732). Plaintiff further asserts that the RFC finding fails to accurately reflect the opinions of Drs. Lee and Leaf, in that it does not address seven areas of functioning where Dr. Lee opined that Plaintiff had "moderate" mental limitations. Dr. Leaf adopted these limitations. Instead, the ALJ determined that Plaintiff has moderate impairments in three areas: (1) activities of daily living; (2) social functioning; and (3) concentration, persistence or pace. (AR 20.) Plaintiff thus contends that the ALJ's RFC limitation does not adequately encompass or reflect Dr. Lee's complete opinion.

Plaintiff also asserts that the hypothetical question posed to the vocational expert ("VE") was incomplete in that it failed to include all the exertional and non-exertional limitations which apply to Plaintiff.

The Commissioner's contention is that the ALJ properly relied upon the non-examining State Agency physicians because their opinions were corroborated by treating physician Dr. De Guzman.

Plaintiff does raise an issue concerning her physical limitations based upon obesity. The Commissioner responds that obesity was never alleged as a physical impairment until this litigation and that, in any event, there is no evidence that any physical impairments from which Plaintiff suffers were inadequately controlled with medication.

**A.   Applicable Law**.

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias;

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

4

>psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of

limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration;

6

persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p makes the same point in distinguishing evidence supporting a rating of mental severity at Step Two, a Listing level impairment at Step Three, and the determination of an individual's MRFC at Step Four.

**B.   Plaintiff's History of Mental Health Treatment.**

The record indicates that Plaintiff received continuous mental health treatment from various medical sources between 2006 and 2010. She began her treatment with Dr. Gantt on September 6, 2006 treating with Dr. Gantt for 51 sessions through August 4, 2010. (AR 672-710, 724-727.)

From April 2006 to August 2008, Plaintiff was treated on 23 occasions for both mental and physical impairments by various physicians at Central Coast Family Care. (AR 402-480.) In April 2006, Dr. John Okerblum diagnosed Plaintiff as suffering from depression with anxiety and Attention Deficit Disorder ("ADD"), and further noted that because her medications were both ineffective and caused negative side effects, he determined to refer Plaintiff for psychiatric evaluation by Dr. El-Asyouty, who then treated Plaintiff in 2006. (AR 477-480, 714-718.)

The record would support a conclusion that between 2006 and 2008, Plaintiff's condition was unstable and deteriorating.  Dr. Gantt made a notation in March 2008 that Plaintiff had been suicidal and in April

2008, she was hearing voices in her head, reported major mood swings, and was severely depressed. (AR 696.) Shortly thereafter, in May 2008, Plaintiff told Dr. Gantt that she lost her job as a recess monitor at school because she was screaming at the children, told the Vice Principal that she was bipolar, and the children made fun of her. Plaintiff was hospitalized for her mental condition in May 2008. At that time, she was taking a variety of medications including Lithium, Loestrin, Lexapro, Geodon, Atenoll, Phentermine, and Abilify. Following a seven-day hospitalization, the Lexapro and Phentermine were discontinued, and Plaintiff began taking Strattera, Colnazapam, and Cymbalta. (AR 693, 700.) From this record alone, it would be difficult to conclude that Plaintiff was capable of full-time employment during this time period. Of course, in her Application Plaintiff alleged that she has been disabled since April 30, 2008, so the relevant question is whether Plaintiff's condition improved after her hospitalization such that it would be fair to conclude she was capable of full-time employment.

In November 2008, Plaintiff was assessed by clinical neuropsychologist Dr. Wylie, who summarized the results of cognitive functioning tests with a diagnosis on Axis I of major depressive disorder, generalized anxiety disorder, and learning disorder NOS. (AR 548.)

The ALJ discussed the findings of treating psychologist Dr. De Guzman from October 2010. (AR 22-23.) In part, the ALJ noted that Dr. De Guzman reported bipolar disorder and improvement in compulsive shopping, and that Plaintiff's mood was more stable at times. The ALJ noted that Dr. De Guzman rendered a guarded prognosis, concluding that Plaintiff would likely need continued support from her parents.

8

1  Further noted were Dr. De Guzman's assessment of moderate limitations
2  in Plaintiff's ability to remember work-like procedures; maintain
3  attention for two-hour increments; maintain regular attendance and be
4  punctual within customary tolerances' sustain an ordinary routine
5  without special supervision; work in coordination with or proximity to
6  others without being unduly distracted; make simple work-related
7  decisions; complete a normal work day/week without interruptions from
8  psychologically based symptoms; perform at a consistent pace without
9  an unreasonable number and length of rest periods; accept instructions
10 and respond appropriately to criticism from supervisors; get along
11 with co-workers or peers without unduly distracting them or exhibiting
12 behavioral extremes; respond appropriately to changes in a routine
13 work setting; deal with normal work stress; be aware of normal hazards
14 and take appropriate precautions; understand, remember and carry out
15 detailed instructions; deal with semi-skilled and skilled work; and
16 interact appropriately with the general public.  Dr. De Guzman
17 expected that due to her mental health impairments, Plaintiff would be
18 absent from work more than four days per month. (AR 730-731.)

19  Despite this plethora of moderate mental health limitations, the
20 ALJ did not indicate whether she accepted or rejected all or any of
21 the conclusions rendered by Dr. De Guzman.  Certainly, if Dr. De
22 Guzman is correct that Plaintiff would be expected to be absent from
23 work more than four days per month, then in a one-year period this
24 would amount to almost 50 days, which would likely render Plaintiff
25 unemployable.  Of further concern to the Court is that even in 2010,
26 when Dr. De Guzman wrote this report, she noted something which many
27 of Plaintiff's mental health professionals had also regularly
28 recognized, which is that, in Dr. De Guzman's words, "Despite her

9

compliance with her medications, individual therapy, and family support, patient's stability has always been brief that she has not been able to work at a regular job." (AR 732.) If this conclusion is accepted, again, a very definite question is raised as to Plaintiff's employability. Yet, the Court does not consider that the ALJ adequately weighed this evidence, or determined whether to accept it or reject it. In that regard, the Decision's reliance on earlier, non-examining State Agency physicians to render a mental RFC is troubling. Plaintiff has a very long history of mental health treatment, and has uniformly been diagnosed on Axis I with serious disorders. Based on all the evidence in the record, the Court must conclude that substantial evidence does not support the ALJ's RFC determination. As in many cases involving mental health issues, there are often times when medications may work better than at other times, or a patient may show some improvement. But in Plaintiff's case, there would appear to be a well-documented history of instability, unsuccessful response to medications, and ongoing issues which relate directly to Plaintiff's ability to be employed. For this reason, the Court agrees with the position articulated by Plaintiff as to the mental health issues in dispute in this case, and will remand for further hearing to address these issues.[2]

Further, on remand, the ALJ will examine whether Plaintiff is obese, and if so, whether her obesity has any impact on her asthma and knee problems. Further, a determination will be made as to whether

---

[2] Concerning Plaintiff's argument in Issue 1 that the ALJ erred in failing to address all mental functioning limitations assessed by Dr. De Guzman, this is not necessarily correct. Rather, an ALJ is required to specifically address the relevant categories identified in the regulations (see infra at pp. 5-6). See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).

1  Plaintiff has any deleterious side effects from her medication which
2  are relevant to assessing her ability to work.
3      Finally, with regard to the third issue, concerning the
4  evaluation of Plaintiff's credibility and the consideration of the
5  evidence from Plaintiff's mother, the Commissioner argues that based
6  on the ALJ's determination that Plaintiff "stabilized with medication"
7  (AR 23), Plaintiff's subjective testimony could legitimately be
8  rejected as not fully credible.  But as the Court has indicated, there
9  are serious questions to be resolved as to whether Plaintiff's
10 medication in fact has stabilized her mental health condition so as to
11 render her employable, and whether there are side effects from her
12 medications.  In addition, the Court rejects the Commissioner's
13 contention that the testimony of Plaintiff's mother was cumulative to
14 her own testimony. Indeed, it can reasonably be viewed that the
15 testimony of Plaintiff's mother might provide corroboration, for
16 example, of Dr. De Guzman's conclusion that Plaintiff would miss about
17 four days of work per month due to her mental condition.  This was the
18 exact testimony offered by Plaintiff's mother.  Consequently, the
19 Court orders that on remand, the determination of Plaintiff's
20 credibility and the weight to be afforded to the testimony of her
21 mother will be reevaluated <u>do</u> <u>novo</u>.
22     For the foregoing reasons, this matter will be remanded for
23 further hearing consistent with this Memorandum Opinion.
24     **IT IS SO ORDERED.**

26 DATED: July 25, 2013                   /s/
                                    VICTOR B. KENTON
27                                  UNITED STATES MAGISTRATE JUDGE

11